Kevin ENGLISH, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 98–90.

Supreme Court of Wyoming.

May 27, 1999.

Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Peter H. Froelicher, Assistant Public Defender; and T. Alan Elrod, Assistant Appellate Counsel, Representing Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistant Program; and Shelley J. Towler, Student Intern., Representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR *, JJ.

TAYLOR, Justice, Retired.

Convicted of one count of taking indecent liberties with a minor, appellant now claims that numerous evidentiary errors were made by the district court, and that the prosecutor's closing argument was both improper and prejudicial. Finding that substantial errors occurred, we reverse and remand for a new trial.

## I. ISSUES

Appellant, Kevin English (English), presents four issues for review:

I. Did the trial court commit reversible error when it permitted the complaining witness's mother and the investigating officer to testify about hearsay statements made to them by the complaining witness?

II. Was it reversible error when the prosecutor repeatedly attacked the integrity of appellant's trial counsel in his closing argument and ignored the district court's order regarding uncharged misconduct?

III. Did the district court commit reversible error when it denied appellant's requests for a pretrial taint hearing and a competency hearing.

IV. Did the district court commit reversible error when it granted appellee's motion in limine and excluded appellant's proffered expert testimony.

As appellee, the State of Wyoming's statement of the issues is substantially similar:

I. Did the district court err when it admitted the hearsay testimony of the child victim's mother and the investigating officer regarding statements made to them by the child victim?

II. Did counsel for the State commit reversible error during rebuttal closing argument, or by violating the pretrial order of the district court excluding certain evidence of prior bad acts?

III. Did the district court commit reversible error when it denied appellant's motions for a pretrial taint hearing and for a competency hearing relating to the child victim?

IV. Did the district court commit reversible error when it granted the State's motion in limine excluding the testimony of appellant's expert witness?

## II. FACTS

On the evening of December 31, 1996, BNM, a five-year-old, and her younger brother were left in English's care. BNM's mother and her boyfriend agreed to allow English to babysit the children while they went to a New Year's Eve party in exchange for canceling a $20.00 debt. The mother testified that when she left the house, BNM had bathed and was dressed in a blanket sleeper. When the mother returned from the party, however, she found BNM asleep on her bed wearing only a t-shirt. The mother roused BNM and asked her why she had taken off her sleeper, to which the child responded that she was hot. The mother accepted the explanation, and went to bed.

The next morning, according to the mother, BNM was not herself. The mother observed what she considered to be overly affectionate behavior towards English. She also noticed that BNM "was pulling her underwear up and she would sit at the edge of a chair and rub it. It wasn't normal." At this time, the mother did not suspect that English had touched her daughter inappropriately.

* Retired November 2, 1998.

On January 2, 1997, the mother's birthday, the mother drove English on several errands. Partially in return for the ride and partially as a birthday present, he volunteered to babysit the children again while the mother and her boyfriend celebrated her birthday. Again, the mother bathed the children and dressed them in their sleepers before she left. Among the celebrants was a friend of the mother's, who also had a small child and who had left her son in the care of another friend, SM, for the night. SM took the boy to the residence where English was watching BNM and her brother so that the adults could play cards while the children played together.

SM found the screen door locked when he arrived, which he thought was odd, as the door was usually unlocked. SM testified that he was about to leave when the boy said he heard BNM's voice within the house. SM then went to a side window and, according to his trial testimony, saw English and BNM standing naked in the bathtub. SM testified that he ran to the screen door and began pounding on it. When English opened the door, SM said that English was wet and wearing only his jeans. English asked SM to be quiet as BNM was sleeping, but allowed SM and the boy to enter the house. SM said nothing about what he had witnessed through the window. Several minutes later, BNM came out from her bedroom in the back of the house with wet hair and wearing only a t-shirt. When the mother returned home, she found SM and English asleep on the couch. She checked on her children, found nothing out of the ordinary, and went to bed.

During the night, SM told the mother's friend what he had seen through the window, although he said nothing to the mother, and he actually gave English a ride home in the morning. On the afternoon of January 3, 1997, the mother's friend informed the mother of what SM had witnessed. At about 8:00 p.m. on January 3, 1997, the mother questioned BNM in the bathroom about the pre-

vious evening. BNM initially said nothing about English. Only after the mother became "desperate" and asked BNM to trade secrets with her did BNM admit that English had "played with [my] pee-pee." The mother asked her if English had made her touch his pee-pee or put his pee-pee in her pee-pee, and she said no. The mother, understandably upset, became ill, and the child quickly recanted, saying she was only kidding.

At about 10:00 p.m. on January 3, 1997, the mother telephoned English and asked him to come over. SM drove English to the mother's residence. When they arrived, the mother threatened English with a rifle. English denied having touched the girl, and asked BNM why she was lying. BNM responded, "I didn't—I didn't lie, mom." SM and English retreated from the house, and SM gave English another ride home.

On the morning of January 4, 1997, BNM told her mother that English had indeed touched her pee-pee, but on a night when the mother's friend's son was not present. The mother took BNM to the hospital that afternoon, where a rape kit physical examination was performed. The examining physician found no evidence of penetration. Officer Delger of the Evansville police department arrived at the hospital shortly after the mother and BNM. The mother explained to Officer Delger what had happened, and Office Delger then interviewed BNM who repeated essentially the same statements she had made to her mother.

An information was filed on April 11, 1997, charging English with one count of taking immodest, immoral or indecent liberties with a minor in violation of Wyo. Stat. Ann. § 14–3–105 (Michie Cum.Supp.1996).[1] However, the date of the crime was listed as December 31, 1996, the first night English babysat BNM, rather than January 2, 1997.

Prior to trial, English filed a motion requesting that the district court determine whether BNM, as a result of her tender age, was competent to testify at trial. English also filed a motion requesting the district

---

1. Wyo. Stat. Ann. § 14–3–105 provides, in part:
 (a) Any person knowingly taking immodest, immoral or indecent liberties with any child or knowingly causing or encouraging any child to cause or encourage another child to commit with him any immoral or indecent act is guilty of a felony.

court conduct a taint hearing pursuant to *State v. Michaels*, 136 N.J. 299, 642 A.2d 1372 (1994). Such a hearing would determine whether suggestive interview techniques tainted the child's testimony to the point where it is no longer reliable. Both motions were denied by the district court. Undeterred, English attempted to bring in an expert witness who would testify as to the reliability of child witness testimony when interviews are conducted in a suggestive manner. The State moved to exclude the expert's testimony, and the district court granted the motion.

At trial, the State placed BNM on the stand, but she was unable to respond to the prosecutor's simple questions. After several attempts to make BNM feel comfortable, the prosecutor asked for a recess. The prosecutor asked the district court whether he could bring in BNM's testimony through the mother's and Officer Delger's hearsay testimony. An unrecorded hearing was held on the request, and the testimony was ultimately admitted. No reason was given by counsel or the district court explaining the court's decision to admit the hearsay testimony.

The jury convicted English of one count of taking indecent liberties with a minor, based on the hearsay statements of the mother and Officer Delger, one eyewitness whose testimony was inconsistent, and, English contends, improper closing argument by the prosecutor. He was sentenced to a term of six to eight years in the Wyoming State Penitentiary.

## III. STANDARDS OF REVIEW

The decisions of the district court concerning the testimony of the investigating officer and the victim's mother, the denial of pretrial taint and competency hearings, and the exclusion of English's expert witness, as evidentiary rulings, are reviewed under the same standard of review.

 Rulings on the admissibility of evidence are within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of a clear abuse of discretion. *Simmers v. State*, 943 P.2d 1189, 1197 (Wyo.1997); *Vit v. State*, 909 P.2d 953,

956 (Wyo.1996). We will not overturn a trial court's discretionary decision unless the court acted in a manner exceeding the bounds of reason and could not rationally conclude as it did. *Simmers*, 943 P.2d at 1197; *Vit*, 909 P.2d at 956–57.

 " '[D]ecisions of the trial court with respect to the admissibility of evidence are entitled to considerable deference and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be reversed on appeal.' " *Simmers*, 943 P.2d at 1197 (*quoting Vit*, 909 P.2d at 957 and *Tennant v. State*, 786 P.2d 339, 343 (Wyo.1990)). It is also well established that a district court judgment may be affirmed on any proper legal grounds supported by the record. *Bird v. Rozier*, 948 P.2d 888, 892 (Wyo.1997). However, where the law imposes a duty on the district court to make findings on the record, we will not speculate as to the reasons for the decision.

English's claims of prosecutorial misconduct are reviewed using the following standard of review:

"Claims of prosecutorial misconduct are settled by reference to the *entire* record and hinge on whether a defendant's case has been so prejudiced as to constitute denial of a fair trial. Similarly, the propriety of any comment within a closing argument is measured in the context of the *entire* argument. A trial court's rulings as to the scope of permissible argument will not be disturbed absent a 'clear or patent' abuse of discretion. Even then, reversal is not warranted unless a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict."

*Gayler v. State*, 957 P.2d 855, 860 (Wyo.1998) (*quoting Arevalo v. State*, 939 P.2d 228, 230 (Wyo.1997)) (emphasis in original).

## IV. DISCUSSION

### A. EVIDENTIARY CLAIMS

#### 1. W.R.E. 804(b)(6) AND 803(24)

We first consider English's claims of evidentiary error. The first of these is that the testimony of BNM's mother and Officer Delger was inadmissible hearsay and violated

English's constitutional right to confront witnesses against him.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W.R.E. 801(c). Both parties agree that the statements were hearsay within the definition. Although hearsay evidence is ordinarily inadmissible, it may be received into evidence when it falls within one of the exceptions to the hearsay rule. W.R.E. 802; *Blake v. State*, 933 P.2d 474, 477 (Wyo.1997). The parties also agree, as do we, that the only exception possibly applicable to the statements at issue here are the catch-all exceptions contained in W.R.E. 803(24) and 804(b)(6).

The language in W.R.E. 803(24) and 804(b)(6) is identical, with the exception that the availability of the declarant is immaterial under W.R.E. 803(24), while the declarant must be unavailable in order to invoke W.R.E. 804(b)(6). The rules provide:

The following are not excluded by the hearsay rule * * *:

* * *

* * * *Other exceptions.*—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence on which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

W.R.E. 803(24) and 804(b)(6).

■ This court has imposed additional limits upon the admissibility of hearsay statements under the catch-all exceptions. Pursuant to the confrontation clause of the Sixth Amendment to the United States Constitution and Wyo. Const. art. 1, § 10, the proponent of the statements is required to provide sufficient background information concerning the circumstances under which the hearsay statement was made to provide the jury with an adequate basis to evaluate its veracity. *Crozier v. State*, 723 P.2d 42, 47 (Wyo.1986). In imposing stringent restrictions upon the use of the catch-all exceptions, we have been motivated by the purpose of the exceptions to the hearsay rule, which is to allow trustworthy hearsay evidence to be admitted, when it is, in fact, worthy of trust and necessary to effectuate justice. *Tennant*, 786 P.2d at 344; *Hopkinson v. State*, 632 P.2d 79 (Wyo.1981), *cert. denied*, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). To that end, we have imposed an additional burden upon the district court. We said in *Betzle v. State*, 847 P.2d 1010, 1021 (Wyo. 1993) (*citing State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985)):

If the trial court chooses to rely on this exception to allow the admission of hearsay evidence at trial, it must make a record by appropriate statements of rationale, or findings of fact and conclusions of law to support its discretionary decision.

■ In this case, the district court failed to meet its burden. The record in this case does not provide any indication of the district court's rationale or findings of fact and conclusions of law. A hearing on the issue did take place. However, the hearing was not recorded, and the summary of that proceeding subsequently placed into the record is insufficient to establish the district court judge's rationale or the underlying facts. Without an adequate record, we are unable to perform our reviewing function, and, therefore, must question the reliability of the conviction. *See Bearpaw v. State*, 803 P.2d 70, 78 (Wyo.1990) (lack of record compelled reversal and remand of a conviction for second-degree murder). Therefore, we hold that the district court erred in failing to

make the appropriate record to support its discretionary decision.

Until such a record is made, we cannot make an informed decision upon any other possible errors in the admission of the statements as they may have been addressed and decided by the district court. Therefore, we do not address English's contentions that proper notice was not given of the intention to use the catch-all exceptions or that admission of the statements violates English's confrontation clause rights. Only after the basis for the decision by the district court is clear can such questions be resolved.

### 2. COMPETENCY AND TAINT HEARINGS

English's next evidentiary claim of error is that the district court erred when it denied his motions for competency and taint hearings. English admits that a pretrial "taint hearing" is an unknown procedure in Wyoming law; however, he has attempted to persuade us that the procedure should be adopted in Wyoming. The State has responded by disputing the necessity of such a procedure. Unlike the parties, we find that resolution of the issue is forthcoming only when the concepts of competency and taint are not unnecessarily complicated by segregation. We endeavor here to clarify the state of the law in Wyoming on this issue.

The Wyoming Rules of Evidence provide that "[e]very person is competent to be a witness except as otherwise provided in these rules." W.R.E. 601. "A person is generally competent to testify if he can understand, receive, remember and narrate impressions and is sensible to the obligations of the oath taken before testifying." *Simmers,* 943 P.2d at 1199; *Larsen v. State,* 686 P.2d 583, 585 (Wyo.1984). "Intelligence, not age, is the guiding criteria in determining the competency of a witness." *Baum v. State,* 745 P.2d 877, 879 (Wyo.1987). It is a well-established principle of law that competency of witnesses to testify is a question within the sound discretion of the trial court. *Selby v. Savard,* 134 Ariz. 222, 655 P.2d 342, 347 (1982); *People v. Estorga,* 200 Colo. 78, 612 P.2d 520, 524 (1980); *State v. Joblin,* 107 Idaho 351, 689 P.2d 767, 771 (1984); *State v. Howard,* 247 Mont. 370, 806 P.2d 1038, 1039 (1991). However, when children are called

into the courtroom to testify, we have held that once the child's competency is called into question by either party, *it is the duty of the court* to make an independent examination of the child to determine competency, and that determination will not be disturbed unless shown to be clearly erroneous. *Burt v. Burt,* 48 Wyo. 19, 41 P.2d 524, 525 (1935) (*quoting* 5 Jones Commentaries on Evidence 3958, 3959, § 2107 (2d Ed.)). *See also Punches v. State,* 944 P.2d 1131, 1136 (Wyo. 1997); *Trujillo v. State,* 880 P.2d 575, 579 (Wyo.1994); *Baum,* 745 P.2d at 879; and *Larsen,* 686 P.2d at 585.

We have directed the district courts to utilize a five-part test for determining the competency of child witnesses:

> "(1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it."

*Larsen,* 686 P.2d at 585 (*quoting State v. Allen,* 70 Wash.2d 690, 424 P.2d 1021 (1967)).

The New Jersey Supreme Court, prompted by its recognition that children can be susceptible to suggestive interview techniques and that such techniques can undermine the reliability of a child's account of actual events, adopted a procedure termed a "taint hearing." *Michaels,* 642 A.2d at 1382–84.

> The [New Jersey] Supreme Court held that a pretrial "taint" hearing was the appropriate method of determining whether the investigatory interrogations and interviews "were so suggestive that they give rise to a substantial likelihood of irreparably mistaken or false recollection of material facts bearing on defendant's guilt." * * * The Court held that the initial burden of triggering the taint hearing is on the defendant, who must make a showing of "some evidence" that the victim's statements were the result of suggestive interview techniques. * * *

The factors that should be considered in assessing the reliability of a complaint regarding sexual offenses are: "(1) the age of the victim; (2) circumstances of the questioning; (3) the victim's relationship with the interrogator; and (4) the type of questions asked." * * * Undue suggestiveness can occur when an interviewer has a preconceived notion of what has happened to a child, the interviewer uses leading questions, the interviewer is a trusted authority figure, the person accused of wrongdoing is vilified during the interview, or the interviewer uses threats or rewards to pressure the child.

*State v. Scherzer*, 301 N.J.Super. 363, 694 A.2d 196, 245–46, *cert. denied*, 151 N.J. 466, 700 A.2d 878 (1997) (*summarizing and quoting Michaels*, 642 A.2d at 1377–1383).

 While we agree with the reasoning of the New Jersey Supreme Court, we conclude that there is no void in Wyoming law which a "taint hearing" procedure would fill. The Washington State Supreme Court considered the issue in *Matter of Dependency of A.E.P.*, 135 Wash.2d 208, 956 P.2d 297 (1998), and found that the competency inquiry included the question of pretrial taint. That court also utilizes the five-part test to determine the competency of child witnesses:

"The true test of the competency of a young child as a witness consists of the following: (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it."

*Id.* at 304 (*quoting Allen*, 70 Wash.2d 690, 424 P.2d 1021). Recognizing the overlap in competency and taint considerations, the Washington State Supreme Court said:

We decline to adopt a pretrial taint hearing as a requirement for the reason that the existing state of the law adequately addresses Petitioner's concerns. As to the reliability of a child's testimony, a defendant can argue memory taint at the time of the child's competency hearing. If a defendant can establish a child's memory of events has been corrupted by improper interviews, it is possible the third *Allen* factor, "a memory sufficient to retain an independent recollection of the occurrence[,]" may not be satisfied.

*Matter of Dependency of A.E.P.*, 956 P.2d at 307 (*quoting Allen*, 70 Wash.2d 690, 424 P.2d 1021). We similarly decline to adopt a separate pretrial "taint hearing" procedure as the concerns addressed by such a procedure can be adequately addressed during the competency hearing which we have required since 1935. We do, however, endorse the use of the factors set out in the *Michaels* decision as they relate to the question of independent recollection.

 While we have repeatedly stated that a competency hearing is required, we have not fulfilled our obligation to provide guidance as to the critical next question: When is that hearing necessary? The *Michaels* court found that there must be a showing of at least "some evidence" that the victim's statements were the product of suggestive or coercive interview techniques before a "taint hearing" must be granted. *Michaels*, 642 A.2d at 1383. In contrast to this rather lenient standard, 18 U.S.C. § 3509(c) requires a showing of "compelling reasons" before the federal courts can hold a competency hearing. Other jurisdictions utilize a presumptive age, below which there exists a rebuttable presumption that a child is incompetent, and a hearing must be held. *See* Ariz.Rev.Stat. Ann. § 12–2202 (West 1994) (children under ten years of age are presumed to be incompetent). We find, given our longstanding directive requiring competency hearings, that the "some evidence" standard articulated in *Michaels* is the most compatible with existing Wyoming law. Absent legislative direction, we are unwilling to set an arbitrary age below which children are presumed incompetent. We are also unwilling to place such a high burden of proof upon a litigant that the benefits accrued from the testimony of a child are outweighed by the possibility of unreliability inherent in incompetent testimony. Therefore, we hold that

whenever any party presents the court with some evidence that a child witness is incompetent, the hearing procedure is triggered.

■ Application of the *Michaels* factors to the case at hand reveals that sufficient evidence was presented to trigger a competency hearing, which includes consideration of whether the child's memory was tainted. First, the age of the victim, five years old, weighs heavily in favor of granting the competency hearing. Second, the circumstances surrounding the questioning of the child suggest that the child's recollection of the events in question has been tainted. At the time BNM was questioned, her mother was acting under the assumption that English had touched her, and used leading questions to elicit answers that conformed to the assumption. Third, the mother is a trusted authority figure. Fourth, the mother used rewards to pressure the child; i.e., trading secrets. Finally, a factor of great importance in this inquiry is the fact that BNM's initial statements were not spontaneous, but rather the product of interrogation.

Under the circumstances, English presented substantially more evidence of BNM's possible incompetency than is necessary to warrant a hearing on the issue; specifically, her ability to independently recall the events that took place on December 31, 1996 and January 2, 1997. Therefore, we hold that the district court erred in denying the motion for a competency hearing.[2]

## B. PROSECUTORIAL MISCONDUCT

English's next assignment of error concerns statements made by the prosecutor during rebuttal argument. Just prior to the victim taking the stand, the prosecutor moved the podium between the witness stand and the defendant, so that they could not see each other. Defense counsel objected to the podium placement, based on English's right to confront the witnesses against him. After a bench conference, the podium was moved so that English and BNM could see each other. During closing argument, the prosecutor referred to the incident as follows:

And what about [BNM] in the courtroom? Well, now, she wasn't able to testify, because she was scared. And [defense counsel] made a big to-do about that. But look at some of the tactics, ladies and gentlemen, that were used. You know as well as I do that [BNM] has never seen Kevin English since the day this happened, because her mom is not going to allow her to ever be close to this man.

And just imagine, if you will, her walking into this courtroom and sitting in that chair and looking around and staring that man in the face. For the first time, she is going to feel nothing but anger—or nothing but fear—and she clammed up and froze up. And they knew that. And that's why they moved the podium out of the way when I set it right here.

[DEFENSE COUNSEL]: Objection, Your Honor, that's not relevant, and that's not why.

[PROSECUTOR]: You saw him move the podium, ladies and gentlemen.

[DEFENSE COUNSEL]: Your Honor, I object. And I would appreciate it if [the prosecutor] would not make any more reference to that. My client had a right to see the trial.

[THE COURT]: I'll sustain the objection.

[DEFENSE COUNSEL]: Thank you.

[PROSECUTOR]: And you know, ladies and gentlemen, that when she got here in the middle of the courtroom, and [defense counsel] asked for us to approach the bench, that that little girl was sitting out here in the middle all by herself.

[DEFENSE COUNSEL]: Objection, Your Honor. That's not proper argument either.

[PROSECUTOR]: That's what happened, Your Honor. I can argue what happened.

[DEFENSE COUNSEL]: Your Honor, that's not proper. He should be arguing the evidence of the case not strategy, not tactics, whether or not they are.

---

2. We do not, by this decision, mandate the particular time or form of the hearing required. Some cases may be more properly heard prior to trial and some may be more properly heard during trial outside the hearing of the jury.

[THE COURT]: I'll overrule the objection.

[PROSECUTOR]: It was a tactic, and it worked. And, ladies and gentlemen, it's unfortunate we didn't hear from [BNM]. But you don't need her testimony to convict, because you heard it anyway. You heard exactly what she told her mother * * *.

■■■■ In presenting closing argument, the prosecutor is entitled to reflect upon the evidence and to draw reasonable inferences from that evidence in order to assist the jury in its function. *Armstrong v. State,* 826 P.2d 1106, 1116 (Wyo.1992); *Jeschke v. State,* 642 P.2d 1298, 1301–02 (Wyo.1982). Argument designed to appeal to the juror's passion or prejudice is improper. *Gayler,* 957 P.2d at 861; *Armstrong,* 826 P.2d at 1116; *Hopkinson,* 632 P.2d at 145.

It is firmly established that the lawyer should abstain from any allusion to the " 'personal peculiarities and idiosyncrasies of opposing counsel. A personal attack by the prosecutor on defense counsel is improper, and the duty to abstain from such attacks is obviously reciprocal.' " *United States v. Young,* 470 U.S. 1, 10, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (*quoting* ABA Standards for Criminal Justice 4–7.8 at 4.99).

■■■ The prosecutor's argument here was a calculated attack upon the integrity of defense counsel, aimed at inflaming the passion and prejudices of the jury. The prosecutor's remarks strongly implied that defense counsel wanted the podium moved solely to intimidate the victim. Intimidation of a witness is a felony offense under Wyo. Stat. Ann. § 6–5–305(a) (Michie 1997).[3] We can envision no situation in which accusations of counsel's criminal conduct are appropriate in closing argument. Therefore, the State's arguments of invited error are unavailing and will not be considered.

■■■ Moreover, the prosecutor insinuated that defense counsel asked for a bench conference in order to leave the young victim alone on the witness stand in full view of English. While a prosecutor may comment on the events that took place at trial, accusations of improper abuse of process have no place in front of the jury. If the prosecutor suspects such conduct, the appropriate action would be to call it to the attention of the district court judge, thereby eliminating any possibility that the jury's verdict will be made in retaliation rather than in consideration of the evidence.

■■■ Having determined that the remarks were improper, we must now determine whether they were so prejudicial as to warrant reversal. *Gayler,* 957 P.2d at 861. In the case before us, the evidence was weak at best. Without the prosecutor's remarks, a substantial likelihood exists that English may have enjoyed a more favorable verdict had the statements not been made. Therefore, reversal is warranted in this case.

Having found several errors necessitating reversal, we will not consider English's remaining claim of error.

## V. CONCLUSION

We find that numerous and substantial errors occurred in the district court proceedings. The district court is charged with making a record whenever the catch-all exceptions to the hearsay rule are employed and with examining the competency of child witnesses when the issue is properly before the court. Failure to fulfill these obligations is error necessitating reversal. Moreover, the prosecutor's remarks, well beyond the bounds of permissible argument, were unquestionably prejudicial. We reverse and remand for a new trial.

---

**3.** Wyo. Stat. Ann. § 6–5–305(a) provides:

A person commits a felony punishable by imprisonment for not more than ten (10) years, a fine of not more than five thousand dollars ($5,000.00), or both, if, by force or threats, he attempts to influence, intimidate or impede a juror, witness or officer in the discharge of his duty.