**Felix ALICEA, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 99–212.**

Supreme Court of Wyoming.

Dec. 1, 2000.

Rehearing Denied Dec. 19, 2000.

Representing Appellant: G. Kevin Keller, Cheyenne, WY. Argument presented by Mr. Keller.

Representing Appellee: Gay Woodhouse, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Mary Beth Wolff, Special Assistant Attorney General. Argument presented by Ms. Wolff.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL, and KITE, JJ.

HILL, Justice.

Appellant Felix Alicea (Alicea) seeks review of his convictions on six counts for committing sex crimes on children. Alicea contends that the trial court erred in failing to hold a pretrial hearing to determine if the children had sufficient memory to be considered competent to testify. He also asserts that a "taint" hearing should have been conducted to determine if the victims' testimony had been so corrupted by the investigative interviews conducted by a pastor and a school teacher at a religious school, as well as by a detective and a social worker, in preparation for prosecution, that the children's testimony was no longer admissible at trial. In addition, he claims that inadmissible hearsay testimony was admitted over his objections; that an instruction given to the jury relieved the State of its burden of proving all elements of the crime beyond a reasonable doubt, in that the instruction did not require the jury to find that the crimes charged occurred within some sort of time frame; the trial court erred in denying various motions for judgment of acquittal; and, under the somewhat unusual circumstances of this case, he was denied his right to a speedy trial.

We affirm in part, reverse in part, and remand for resentencing in accordance with this opinion.

## ISSUES

Alicea raises these issues:

I. Whether the trial court erred when it denied the Appellant's request for a pretrial competency hearing of the two complaining witnesses.

II. Whether the trial court erred when it allowed witnesses to testify about hearsay statements made to them by the two complaining witnesses.

III. Whether the trial court erred by instructing the jury that the State's failure to establish with precision that the crime occurred within a specified time frame is not fatal.

IV. Whether the trial court erred in failing to grant judgments of acquittal on Counts I, II, III, IV and VI due to insufficient evidence.

V. Whether the Appellant was denied his constitutional right to a speedy trial.

The State rephrases the issues thus:

I. Whether the trial court properly denied Appellant's request for a pre-trial competency hearing.

II. Whether the trial court properly permitted witnesses to testify as to statements made to them by DC and WC.

III. Whether instruction 10 was proper.

IV. Whether the trial court erred in failing to grant Appellant's motion for judgment of acquittal.

V. Whether Appellant was accorded his constitutional right to a speedy trial.

## FACTS

Child abuse, of course including child sexual abuse, must be reported to the authorities by all persons, and some classes of persons are under a heightened duty to report such matters. Wyo.Stat.Ann. § 14–3–205 (LEXIS1999). On January 25, 1997, Fritz Krieger, Pastor of the Cheyenne Seventh Day Adventist Church, was told by his daughter that a friend of hers had related a story which indicated that DC (born January 12, 1982) and WC (born April 17, 1985) had been subjected to improper and illegal sexual activity by Alicea. Krieger and a teacher from the church's school, Jeannie Costopoulos, met with the children on the evening of January 27, 1997, to ask about the story related by Kreiger's daughter and another of DC's friends. Based on these events, Krieger made reports to the Department of Family Services and to the Laramie County Sheriff.

On January 29, 1997, DC was interviewed by Sergeant Linda Renner of the Laramie County Sheriff's Office and Donna Lucas from the Department of Family Services. As a preface to her accusations, DC related that the events occurred in Alicea's mobile home. According to DC, Alicea would ask his own children to go to the "Mini Mart" Store, leaving DC and WC behind, and then he would close the blinds and lock the door. In that interview, DC identified her private bodily areas as "peaches" (breasts), vagina, and "butt." She also identified a male individual's private bodily areas as "dick" (penis) and "butt." DC's first revelation was that Alicea had her touch his "dick." She estimated the time of that occurrence as "two or three years ago." DC stated that both she and her brother touched Alicea's "dick" with their hands and with their mouths. She also stated that Alicea touched her vagina, but that he did not touch WC's private bodily areas. DC also indicated that Alicea would have her on the floor and lie on top of her, rubbing his "dick" both on the outside of her vagina and pushing his "dick" inside her vagina. DC could not remember any specific dates, but told the investigators that the last time it occurred was "two years ago" in April (1995). DC indicated that Alicea had done those sorts of things to her about 30 times. DC indicated that the abuse began when she was five or six years old and ended when she was eleven or twelve.

WC was also interviewed by Sergeant Renner and Donna Lucas. His interview was considerably less revealing. WC identified his penis and his "butt" as his private bodily parts. WC related that Alicea would have the children "touch the penis and then, ummm, move up and down and stuff." Alicea's pants were pulled down when this occurred. WC could not recall how many times these events occurred but indicated that it happened every time they were there, and they were there about once every two weeks. WC's indication was that the abusive conduct occurred at least 20 times, but he was not able to give a more precise number. Alicia told both children not to tell anyone about what they were doing. Many of WC's recollections were vague, but he did say, "I know for sure that I had to touch his penis."

As will become evident as we progress through the issues in this opinion, the testimony furnished at trial by DC and WC differed significantly from the statements outlined above.

On August 13, 1997, an information was filed in the district court alleging ten counts of violation of sexual assault in the second degree or immoral or indecent liberties with a child by Alicea. In the context of that case, the prosecution gave notice that it intended to use W.R.E. 404(b) evidence of other crimes, wrongs, or acts. Specifically, they asked the trial court to approve use of similar allegations made by a third female child as evidence in the case. The district court conducted a hearing as required by *Vigil v. State*, 926 P.2d 351, 357 (Wyo.1996), and concluded that the proffered W.R.E. 404(b) evidence was not admissible. The prosecutor then filed a motion asking the trial court to reconsider its ruling, or, in the alternative, to permit the State to dismiss the charges without prejudice (*i.e.*, they could be subsequently refiled in a second case). The trial court declined to reconsider its ruling, but did dismiss the charges without prejudice by order entered on July 6, 1998.

On July 27, 1998, a second information was filed in the district court. This information also alleged 10 counts involving three different children, DC, WC, and KW. Four of the ten counts involved KW, and recounted events that the prosecution had attempted to use as W.R.E. 404(b) evidence in the first go-around. At the preliminary hearing stage, the county court did not find probable cause to bind Alicea over on the counts involving KW; however, it did bind over the other six counts affecting DC and WC. Preparation then went forward for trial on those six counts.

## NEED FOR PRETRIAL COMPETENCY HEARING

Alicea maintains that the district court abused its discretion in denying a pretrial competency hearing to address Alicea's contention that neither DC nor WC were competent to testify because their memories of the events at issue and, hence, their pro-

posed trial testimony, were too deficient and had been tainted in the process of interviews with the church pastor and school teacher, as well as law enforcement personnel. We have held that when a child is called into the courtroom to testify, and the child's competency is called into question by either party, it is the duty of the trial court to make an independent examination of the child to determine competency, and that determination will not be disturbed unless shown to be clearly erroneous. *English v. State*, 982 P.2d 139, 145 (Wyo.1999). In *English*, we also held that an assertion that a child's testimony was tainted could best be comprehended as a part of the competency hearing and that a separate taint hearing is not required. 982 P.2d at 146. In *English*, we established that the requirement that a competency hearing on the issue of "taint," based on an assertion that the child's statements were the product of suggestive or coercive interview techniques, or some other potentially improper influence, is triggered whenever a party presents the court with "some evidence" that a child witness is incompetent[1]. 982 P.2d at 146–47; *Ryan v. State*, 988 P.2d 46, 58 (Wyo. 1999).

Alicea contends that he presented the trial court with "some evidence" that the children's memories were both faulty and tainted and, therefore, it abused its discretion in not conducting a full-fledged "taint" hearing that included questioning of the children. It is clear from the record that the trial court comprehensively reviewed all materials of record that had a bearing on this issue, and that he patiently considered all arguments and testimony offered by Alicea with an open mind. His conclusion was tacitly that the required showing of "some evidence" was not achieved. The standard, "some evidence" has been defined in a similar context as follows: " 'Some evidence means a quantity more than none or a scintilla, that rationally may lead to a conclusion of incompetency.' " *Hatten v. State*, 978 S.W.2d 608, 611 (Tex. App.—Corpus Christi 1998). In a dissimilar context (threshold for discovery in allegation of selective prosecution), "some evidence" was said to mean that the showing must be

more than frivolous and based on more than conclusory allegations. *United States v. Armstrong*, 48 F.3d 1508, 1512 (9th Cir.1995). In *English*, we did not define what the standard "some evidence" was intended to mean, other than by example. In that case, we held that the following facts were "more than necessary" to meet the "some evidence" standard: The victim was five years of age (weighed heavily in the assessment); the circumstances surrounding the questioning of the child suggested taint (Mother, who did questioning, assumed the sexual touching and asked leading questions that conformed to that assumption); the Mother was a trusted authority figure; Mother used rewards to pressure child (trading secrets game); and the child's initial statements were not spontaneous but the product of interrogation (of great importance). 982 P.2d at 147.

█ We have comprehensively reviewed the record with respect to this issue. We conclude that Alicea's argument boils down to this: The children's testimony was tainted because the various interviewers asked leading and suggestive questions and lacked expertise and experience in interviewing children in circumstances such as those peculiar to this case. Use of leading questions to facilitate an examination of child witnesses who are hesitant, evasive, or reluctant is not improper. *State v. Smith*, 158 N.J. 376, 730 A.2d 311, 319 (N.J.1999). Moreover, Alicea's contentions in this regard were based solely upon the opinion of an expert witness, the psychologist, Dr. Esplin. An examination of his testimony reveals that his opinions were uncertain because of a lack of information and, for the most part, were conclusory and speculative. DC was about 15 years of age when her initial revelations were made, and DC made similar statements between the ages of 10 and 11. Although leading questions were asked by all interviewers, there was no evidence that those interviewers assumed the existence of the criminal conduct, and, as we set out above, the use of leading questions is not improper in this context. While all interviewers were authority figures

---

1. Guidance on the sort of questioning which may be appropriate in such a hearing is found at 35

Am.Jur. Proof of Facts 2d 665, "Qualifying Child Witness to Testify," (1983 and 1999 Supp.).

of various sorts, the record does not suggest that their status as such was used to coerce information from the children. Finally, the record fully supports a conclusion that the children's initial statements to peers were spontaneous and voluntary. Based on the totality of this record, we conclude that Alicea did not meet the threshold requirement of "some evidence" of "taint" to trigger the requirement that the trial court conduct a hearing to enquire of the children as to quality of their memories of the experiences they intended to relate to the jury at trial. We hold that the trial court's resolution of this issue was within its sound discretion and not clearly erroneous.

## ADMISSION OF "HEARSAY"

Alicea contends that the admission of statements made by DC and WC to friends were hearsay, whereas the State contends each such statement was "consistent with his [DC's or WC's] testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[,]" and, therefore, admissible because they were not hearsay. W.R.E. 801(d)(1)(B).

Alicea contends that the statements were not admissible because, at the time the trial court allowed their admission, no express charge against the children of recent fabrication or improper influence or motive had been made. In addition, Alicea asserts that the statements are not consistent with the children's testimony. As noted earlier, the statements given to the police by DC and WC were different from their testimony at trial. DC testified only that she told her friends "what [Alicea] had done to me when I was a little girl," but was unable to recall other details. Eventually, the trial court ruled that she could not testify about the conversations with her friends because she was unable to give answers that were clear enough or definite enough to lay a foundation for that testimony. DC did testify that she was frequently at the Alicea household, as much as two or three times a week, and WC was with her twice a week—and this was true for a period of many years (approximately nine years). Sometimes when DC

and WC were with Alicea, he would send his children to the MiniMart. On such occasions, Alicea would have DC "suck his dick." She could not recall when or how many times that happened. She testified to one occasion where Alicea made her take her pants off and lie on the floor. He also took his pants off and laid on top of her and "started moving." DC also testified that he would have her take her pants off and he would put his fingers inside her vagina, but she could not recall how many times that happened. DC repeated that Alicea would sometimes make her "suck his dick," and that he would then also have WC "suck his dick." She did not know how many times that happened. DC testified that she did not tell anyone about these events because she was afraid Alicea would hurt her. WC testified that when he was at Alicea's home, Alicea would have his children go to MiniMart or Safeway, and then he would lock the door, pull the blinds, and have him and his sister touch Alicea's penis and rub it. WC testified that this first occurred when he was in the first grade, but did not know how many times it happened between then and the time he reached the fifth grade, when the abuse stopped. WC testified that both he and his sister would touch Alicea's penis, but he did not see anything else that happened to his sister. That is a brief sketch of the substantive testimony upon which Alicea's convictions rest.

■ We will quickly put to rest Alicea's first basis for his assertion of error by the trial court. It is abundantly clear that although counsel for the defense studiously avoided cross-examining most witnesses and deferred his opening statement until after the State had presented its case, the principal defenses to be offered by Alicea were an express charge of recent fabrication or improper influence or motive for the testimony given by DC and WC. Throughout the pretrial proceedings Alicea injected his concerns that the children were not competent to testify because of improper influence from church officials and law enforcement personnel and because their memories were faulty because of their tender ages when many of the events occurred. It was also suggested that their memories were influenced by material they

may have come in contact with over the internet at home. Alicea called an expert witness (psychologist) to testify on several occasions (both live and via affidavit) as to the reliability of the children's testimony. The thrust of that testimony was mainly aimed at the suggestive nature of the interviews conducted with the children, but it also contained elements of recent fabrication and improper influence. Of course, at trial the full range of the sort of testimony contemplated by W.R.E. 801(d)(1)(B) was introduced, including expert testimony, as well as testimony that the children were telling their stories to get even with Alicea because he had told DC she would not be permitted to continue in a church youth group because she was attending with insufficient regularity. Thus, the trial court did not err in admitting the testimony before any of the defense witnesses testified about fabrication or improper motive. In this regard, we find no error in the trial court's ruling. *See Humphrey v. State*, 962 P.2d 866, 871–72 (Wyo.1998).

■ Alicea also contends that the statements of the children's friends were not "consistent" with the testimony of DC and WC. In this regard, we note that JS1[2] testified only that Alicea was "doing naughty things to [DC]". This testimony is unclear, at best, but in context it is consistent with what DC related to the court and jury. AG testified that Alicea had "touched her [DC] in ways," had made her "suck his thing," and "had done it to her." AG also asked WC if what DC had told her was true, and he shook his head "yes." JS2 testified that DC told him Alicea had "touched" her, and that he had also "touched" WC. While not on all fours with the testimony of DC and WC, we are persuaded that the testimony was sufficiently consistent with the testimony of DC and WC that we do not view the admission of that testimony as an abuse of discretion under these circumstances. *See Curl v. State*, 898 P.2d 369, 374–75 (Wyo.1995); *Sorensen v. State*, 895 P.2d 454, 459 (Wyo.1995); and *Montoya v. State*, 822 P.2d 363, 367–68 (Wyo. 1991). It may have been more prudent not

to have allowed the testimony, but to the extent that the trial court's ruling may have been questionable, an instruction could have been offered by the defense to cure the very problems now complained of on appeal. *See Montoya*, 822 P.2d at 367. Absent such a request for such a limiting instruction, we decline to treat this disputed testimony as grounds for reversal.

### INSTRUCTION NO. 10

■ One of the central problems encountered in this case was the inability of either DC or WC to recall with much specificity dates, or even general time frames, for the occurrences of the various sexual encounters with Alicea. The prosecutor seemed to have difficulty in phrasing her questions; to the extent the questions were satisfactory, the trial court frequently interjected himself, and the children seem to have been frightened and ill at ease testifying in the courtroom. Instruction Nos. 2–6 listed the elements of each of the six counts charged. Included among those elements were dates. Most of the "time" elements of those instructions were stated as being between a period of months, *e.g.* "between the time period of October 1990, through May 1991," "February 1992 through March 1992," and "during the summer of 1993." That portion of those instructions was modified by Instruction No. 10:

> Even though you have been instructed that the State must prove beyond a reasonable doubt that a crime was committed within a specified time frame, the failure to establish with precision that the crime occurred within that time frame is not fatal, especially in the case of alleged abuse to children. A witness'es [sic] inability to recall specific time frames may be taken into account in weighing the credibility of any witness, along with those factors mentioned in the last paragraph of instruction No. 1.

**2.** Because two of the children called to testify to prior consistent statements had the same initials,

we will refer to them as JS1 and JS2.

We have held that where the specific date is not a required element of the crime, then alleging a general time period, in lieu of a specific date, is sufficient to give a defendant notice and allow him to adequately prepare a defense. *Vernier v. State*, 909 P.2d 1344, 1350–52 (Wyo.1996); *Jackson v. State*, 891 P.2d 70, 75 (Wyo.1995). Indeed, we have even held that it is sufficient for a finding of guilt that the prosecution establish the transaction rather than the exact dates in question. *Brown v. State*, 817 P.2d 429, 437–38 (Wyo.1991). However, we are unable to stretch the spirit, as well as the letter, of those cases to fit the use of Instruction No. 10 as it was employed in this case. The instruction makes it impossible to differentiate between Count I and Count II, between Count III and Count IV, or between Count V and Count VI, because the elements of each of those pairs became exactly the same as a result of the challenged instruction. It is as likely as not that the jury may have found Alicea guilty twice for the exact same act. Therefore, we disapprove of the instruction and find that its use in this case necessitates that we reverse the Judgment and Sentence to the extent Alicea was found guilty of Count II, Count IV, and Count VI.

## DENIAL OF MOTIONS FOR JUDGMENT OF ACQUITTAL

We have set out in detail the key evidence presented at trial. We will direct that the district court vacate Alicea's convictions for Counts II, IV, and VI, and remand to the district court so that he can be resentenced accordingly. We are fully satisfied that there is sufficient evidence to sustain Alicea's conviction for Count I (indecent liberties with DC, contact with Alicea's penis), Count III (sexual assault in the second degree, insertion of Alicea's finger(s) in DC's vagina); and Count V (indecent liberties with WC, contact with Alicea's penis). We note at this juncture that in the Judgment and Sentence the district court directed that all imposed sentences were to run concurrently, so the result of partial reversal is minimal in effect with respect to punishment.

## SPEEDY TRIAL VIOLATIONS

As we noted in our narration of the facts and proceedings in this case, Alicea was initially charged in August of 1997 with the crimes for which he now stands convicted. He was originally arraigned on September 29, 1997. He waived his right to a speedy trial in those proceedings. The charges associated with that arraignment were dismissed on July 6, 1998. Alicea was arraigned on newly filed charges on September 21, 1998, and he was tried during the time period December 14–17, 1998. These time frames are well within the strictures of W.R.Cr.P. 48. A prosecutor may, with leave of the court, dismiss an information. W.R.Cr.P. 48(a). Refiling of those same charges caused the 120 day speedy trial rule to begin to run anew. *Hall v. State*, 911 P.2d 1364, 1370 (Wyo.1996). Alicea was tried well within 120 days of his second arraignment. W.R.Cr.P. 48(b)(2). Because there were about 16 months between Alicea's initial arraignment and his trial, we will briefly discuss the four factors to be considered in the evaluation of a constitutional speedy trial claim: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Hall*, 911 P.2d at 1370–71. As noted, the delay was, in part, caused because the State dismissed the original charges and then reinstituted similar proceedings. Alicea has cited no authority to indicate that this factor would weigh in his favor in this context, and we have found none in our own search. Even considering the full length of time from original arraignment to trial, the delay was not unusual. In the first proceeding, Alicea waived his right to a speedy trial and this Court has invested the district courts with the discretion to extend the time of trial beyond 180 days. W.R.Cr.P. 48(b)(5). After the second arraignment, trial was promptly set for November 2, 1998. A continuance was granted at Alicea's request. The delay, if indeed these circumstances can be characterized as delay at all, was not prejudicial to

Alicea, at least he asserts no specific prejudice and we discern none.

The Judgment and Sentence of the district court is reversed in part, as set out above, affirmed in part, and remanded to the district court for resentencing in conformity with this opinion.