Marvin E. PHILLIPS, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 5046.

Supreme Court of Wyoming.

June 28, 1979.

Kim D. Cannon and Timothy S. Tarver of Burgess & Davis, Sheridan, signed the brief. Cannon appeared in oral argument for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen. and Sharon A. Fitzgerald, Legal Intern, signed the brief. Ms. Fitzgerald appeared in oral argument for appellee.

Before RAPER, C. J., and McCLIN-TOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Appellant-defendant appeals from a judgment entered on a jury verdict finding him guilty of the crime of grand larceny in violation of § 6–7–301, W.S.1977. The item involved in the grand larceny was a truck. We reverse and remand for a new trial.

Defendant contends reversible error exists in three respects: (1) the trial court made an improper and prejudicial comment on the evidence during cross-examination of defendant; (2) defendant was denied the right to a speedy trial; and (3) rebuttal testimony was admitted without proper foundation concerning information provided by a computerized data system. The prejudicial aspects of the trial court's comment were sufficient to deny defendant a fair and impartial trial. Although this determination is sufficient to reverse and remand this matter for a new trial, we address the other two issues inasmuch as the speedy trial issue would require a reversal without remand should defendant's contention thereto be sustained,[1] and inasmuch as the issue relative to the admission of testimony concerning the computerized data information may again arise in the new trial. *Goodman v. State*, Wyo., 573 P.2d 400 (1977); and *Bartlett v. State*, Wyo., 569 P.2d 1235 (1977).

In so addressing these two additional issues, we hold: (1) that defendant was not

---

1. The remedy for a proven violation of the speedy trial right is dismissal of the information or indictment. *Strunk v. United States,* 412 U.S. 434, 439–440, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); and *Stuebgen v. State,* Wyo., 548 P.2d 870, 875 (1976).

denied a speedy trial inasmuch as the delay complained of was occasioned, at least in part, by the defendant himself; and (2) that the testimony relative to the computer data information was improperly received (it is unnecessary to consider whether or not the same was prejudicial).

Facts pertinent to our disposition of the case are set forth as necessary in the discussions of the three issues.

### COMMENTS OF TRIAL COURT

At the trial of this case, the prosecution presented an interwoven network of circumstantial evidence, which linked defendant to the crime. As part of his defense, defendant took the witness stand and generally denied stealing the truck in question. He testified in detail about his business and the circumstances of his presence during the time of and the two months immediately preceding the commission of the crime. His testimony conflicted with evidence presented by the state in some critical areas. On cross-examination, the county attorney began to inquire into defendant's ownership of a Jeep station wagon and a certain license plate number—matters that had not previously been discussed or disclosed during the trial. After defense counsel objected to the relevancy of the inquiry, the trial court stated in the presence of the jury:

"Counsel, I haven't heard anything relevant presented in this case for the last two hours so I'm going to let everything go in. You started it and I'm going to let it go in. Objection overruled."

Both parties agree that defendant had been on the witness stand for about two hours prior to this comment. In addition, the record discloses three previous remarks of the trial court indicating displeasure with the relevancy and pertinency of the testimony elicited from defendant by defense counsel.

■ In the particular circumstances presented here, the quoted comment was reversible error. The presiding judge, as the governor of the trial, shoulders the heavy burden of assuring its proper conduct in accomplishing the fair and impartial administration of justice. We recognize that remarks or comments of the trial judge may not be as improper as is indicated by the words of the record which cannot reflect all of the accompanying subtle factors, such as gestures, facial expressions, actions of counsel, manner in which the comments were delivered, etc. At the same time, this court has previously cautioned trial judges to "be careful and cautious and not comment on the evidence." *In re Nelson's Estate*, 72 Wyo. 444, 266 P.2d 238, 261 (1954); and *State v. Riggle*, 76 Wyo. 1, 298 P.2d 349 (1956), reh. den., 76 Wyo. 63, 300 P.2d 567 (1956), cert. den., 352 U.S. 981, 77 S.Ct. 384, 1 L.Ed.2d 366 (1957). This is particularly true in criminal cases.

> "We have repeatedly said that a judge, in the trial of a case before a jury, should abstain from expressing or indicating by word, deed or otherwise his personal views upon the weight or quality of the evidence. Expressions of opinion, or remarks, or comments upon the evidence which have a tendency to indicate bias on the part of the trial judge, especially in criminal cases, are regarded as an invasion of the province of the jury and prejudicial to an accused. [Citations omitted.]" *Spear v. Commonwealth*, 213 Va. 599, 194 S.E.2d 751, 753 (1973).

The only testimony presented by defendant to support his contention of lack of guilt was that of himself and of his sister. His sister testified primarily concerning defendant's character. He relied on his own testimony to refute the prosecution's case. Defendant's version of events on the day of and on the two days following the larceny conflicted directly with the evidence produced by the state. His credibility was vital to his defense. The comment of the judge that "I haven't heard anything relevant presented in this case for the last two hours"—the two hours of defendant's testimony—conveyed to the jury his opinion that the testimony was not entitled to consideration, and it could infer a lack of credibility on the part of defendant. It was an improper invasion of the province of the jury.

In *Anderson v. State*, 27 Wyo. 345, 196 P. 1047 (1921), the trial court admonished the jury during defendant's testimony that any attempt to return money or notes obtained by defendant through false pretenses was not a defense. This court held that although the remark may have been correct as a legal proposition, it was improper at the time it was made.

" * * * [T]hough we do not suppose it was so intended, they might be taken [by the jury] as an intimation that in the mind of the court the crime had been proven against the defendant, and that his statement of the facts of the transaction was not entitled to credit, or was not sufficient to disprove the evidence for the prosecution. Aside from the embarrassment the remarks may naturally have caused the defendant in completing his statement, they tended to discredit what he had said, as well as what he might say thereafter. * * * " 196 P. at 1057–1058.

In *State v. Lampshire*, 74 Wash.2d 888, 447 P.2d 727, 730 (1968), the comment of the trial judge was similar to that made in this case. In sustaining an objection of the prosecution during direct examination of the defendant, the judge said " '[c]ounsel's objection is well taken. We have been from bowel obstruction to sister Betsy, and I don't see the materiality, counsel.' " The comment was held to be a prejudicial error since it implicitly conveyed to the jury the judge's personal opinion concerning the value of the defendant's testimony and thereby undermined its credibility.

▪ The state argues that even if the comment was error, it was attenuated by the court's instruction to the jury before the taking of evidence that it was not to be concerned with the reasons for, or any inferences from, its evidentiary rulings during the course of the trial. This argument is not persuasive. Even in cases where the judge has attempted to cure the error by a subsequent instruction, it has been held that the damage already done is not capable of being cured. *Anderson v. State*, supra, 196 P. at 1058; *Spear v. Commonwealth*, supra, 194 S.E.2d at 753; *State v. Lampshire*, supra, 447 P.2d at 727.

This court said in *Parker v. State*, 24 Wyo. 491, 161 P. 552, 556 (1916):

" * * * Whether the evidence was sufficient to warrant the verdict returned by the jury we express no opinion; but, whether innocent or guilty, the defendant was entitled to a fair and impartial trial, which from a careful examination and consideration of the record in the case we are convinced was not accorded to him. * * * "

The prejudicial effect of the court's comment in this case was not cured by the pre-evidence instruction.

▪ The state also contends that the error was not properly preserved at trial because appellant failed to object to the comment at the time of its utterance or to otherwise request a seasonable ruling on the matter, citing, *Chrysler Corporation v. Todorovich*, Wyo., 580 P.2d 1123, 1135 (1978). The issue was raised, however, in defense counsel's motion for a mistrial made in chambers at the close of the case. While it is the proponent's burden to call the matter of possible error to the trial court's attention so that it may have an opportunity to consider and correct the error, the comment here made could not be erased from the minds of the jury, and any further reference to it during trial would only aggravate the situation. *Collins v. Sparks*, Ky.App., 310 S.W.2d 45, 48–49 (1958); *Morris v. E. I. Du Pont De Nemours & Co.*, 346 Mo. 126, 139 S.W.2d 984, 129 A.L.R. 352 (1940). We do not intend this as suggesting a departure from the requirement of a contemporaneous objection in most instances wherein a ruling could be obtained within or without the presence of the jury. Here the matter was properly brought to the attention of the trial court. See *Roby v. State*, Wyo., 587 P.2d 641 (1978) (prosecutor misconduct in cross-examination of accused preserved by raising issue of its prejudicial effect in defendant's motion for acquittal or new trial).

## SPEEDY TRIAL

Defendant was arrested on the evening of January 9, 1978. A criminal complaint and warrant were issued on January 12, 1978, and defendant was brought before the justice of the peace on the same day. A preliminary hearing was set for February 9, 1978 but was continued. Defendant was attempting to secure representation of counsel during this period and eventually retained private counsel on April 6, 1978. On April 14, 1978, a preliminary hearing was held, and defendant was bound over to the district court for trial. An information charging defendant with grand larceny was filed on April 18, 1978, and an arraignment on the information was held on April 20, 1978. The case went to trial on May 22, 1978. Defendant was incarcerated during most of the pretrial period.

■ The right to a speedy trial is guaranteed to criminally accused persons by the Sixth Amendment to the United States Constitution and is made obligatory on the states by the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). The same right is secured by Art. 1, § 10 of the Wyoming Constitution. *Cherniwchan v. State,* Wyo., 594 P.2d 464 (1979).

■ The "balancing test" as to whether or not a defendant has been denied the right to a speedy trial was set out in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and was further defined in *Moore v. Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) (per curiam). We have accepted this test. *Cherniwchan v. State,* supra; *Hurst v. State,* Wyo., 563 P.2d 232 (1977); *Stuebgen v. State, supra,* footnote 1. Under this "balancing test" consideration is given to at least four fac-

tors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. These factors are not exclusive and are to be considered with any other relevant circumstances. A "difficult and sensitive balancing process," is thus involved and is to be applied to the peculiar facts of each case.

■ With reference to the length of delay, the record shows that there was an interval of 95 days from the date of defendant's arrest and the date of the preliminary hearing, during which period of time he was in jail. There is no precise length of delay that automatically constitutes a constitutional violation of the speedy trial right. However, when the delay is so protracted as to be presumptively prejudicial, it is a triggering mechanism, which requires "inquiry into the other factors that go into the balance." *Barker v. Wingo, supra,* 92 S.Ct. at 2192. *Fowlkes v. Commonwealth,* 218 Va. 763, 240 S.E.2d 662, 664 (1978). The length of the delay in this case was sufficient to justify further inquiry. Rule 7(b), W.R. Cr.P., effective at the time in question,[2] requires the commissioner to hear the evidence on probable cause within a reasonable time in the absence of waiver by the defendant.

■ In making the further inquiry and turning our attention to the reason for delay we find sufficient support in the record as to a whole[3] for a determination that the delay was occasioned, at least in part, by the defendant himself.

The parties are in general agreement that the delay aspects of the case focus on the period between the arrest and the preliminary hearing. In his affidavit, filed

**2.** Rule 7(a), W.R.Cr.P., has been amended, effective September 1, 1978, to require that a preliminary hearing must be held not later than 10 days after the defendant's initial appearance if he is held in custody.

**3.** Although we can ascertain the cause of delay from indirect references thereto in several separate parts of the record, the failure to include in the record the tape recordings or full transcripts of the proceedings before the justices of the peace (especially that having to do with the continuation of the February 9, 1978 hearing) makes the task difficult, and may make it impossible in other cases. When a speedy trial issue is raised, a safer and better procedure would be to hold an evidentiary hearing thereon in which all evidence is stenographically recorded for inclusion in a transcript in the appellate record.

with a motion to dismiss for denial of speedy trial on May 1, 1978, defendant states that he tried to obtain counsel to represent him following service of the warrant and complaint. He said that he first spoke to attorney "Mike Shoumaker, the Public Defender," who could not represent him because he had $1,000 in cash when he was arrested with which to employ private counsel. He then spoke to attorneys "Stu Healy, Jeff Gonda and Tom Toner," all of whom would not represent him because he could not pay the necessary retainer. He said his sister made arrangements "for Charles Spratt from Buffalo" to represent him when she came to visit him on January 14, 1978. In the motion, he represented that he talked to attorneys "Kim Cannon and Tim Tarver" on January 13 and January 16, 1978, but they declined to represent him without a retainer which he was unable to provide. He did employ Mr. Cannon on April 6, 1978. Mr. Cannon has continued to represent defendant in this matter.

The transcript of the proceedings at the preliminary hearing held on April 14, 1978 before the justice of the peace is in the record. It reflects a reference by the prosecuting attorney during his argument to a taped record of proceedings before the justice of the peace on January 12, 1978 when defendant was first before such justice of the peace. He contended that such reflected an effort by the justice of the peace "to have these matters set, but Mr. Phillips refused representation by the public defender. As a matter of fact, he asked the Court to continue this matter so that he could retain private counsel, and so it was at Mr. Phillips' insistence that this matter was continued until he could retain private counsel."

In this argument and again during oral argument before us, it was indicated that Spratt terminated his representation because the retainer check was not honored by defendant's bank.

Defendant filed three separate motions to dismiss for denial of speedy trial. The one filed on April 13, 1978 was heard by the justice of the peace on April 14, 1978 in connection with the preliminary hearing. It was denied. The second was filed in the district court on May 1, 1978. It was set for hearing on May 4, 1978, and it was indicated that the hearing was held. The record does not contain a transcript of the proceedings at such hearing nor an order thereon. The third motion was made on the first day of the trial. The court heard arguments on it and denied it.

We cannot determine the issue on the basis of information furnished in argument of counsel, *Buchanan v. State,* 263 Ind. 360, 332 N.E.2d 213 (1975). However, the tenor of the whole record—particularly the emphasis placed thereon by defendant in the affidavit and motions submitted by him—reflects the delay to have been occasioned, at least in part, by his desire and effort to obtain private legal representation. See *Hurst v. State,* supra. The decision of the justice of the peace and of the trial court in this respect should not be reversed.

■ The defendant loses his speedy trial safeguards if the delay is entirely or partially caused by him. *Cherniwchan v. State, supra,* and authorities therein cited. But if further attention to the "balancing test" is necessary, we note that there is no question but that defendant adequately asserted the right to a speedy trial as required by the third factor of the "balancing test" and that he was not substantially prejudiced by the delay as required by the fourth factor.

■ His motion to dismiss for denial of a speedy trial and the three hearings thereon reflect the adequacy of his assertion of the right to a speedy trial.

■ Defendant contends prejudice as required by the fourth factor of the balancing test results: (1) from the inability to secure the presence of witness Rhodes because of the delay; (2) from the inability to examine the stolen truck after its recovery because it was returned to the owner, a truck rental agency, and driven to another area; and (3) from damage to business and social activities which resulted from incarceration. Rhodes testified at the prelimi-

nary hearing, where he was subject to cross-examination. This testimony was admitted into evidence and read to the jury at the trial pursuant to stipulation. The stipulation included an agreement to place Rhodes' criminal record before the jury, and such was done. Defendant has not pointed to any specific evidence of probable probative value which would result from examination of the truck or which resulted in damage to his social and business activities. We do not find prejudice to defendant as a result of the delay.

■■■ The defendant was not denied a speedy trial as measured by the "balancing test."

## REBUTTAL TESTIMONY RELATIVE TO COMPUTERIZED DATA

On cross-examination of defendant, the county attorney inquired whether or not the former had removed the license plates from his Jeep station wagon and placed them on a rental Ford Econoline van. Defendant's reply was in the negative. The state attempted impeachment through the rebuttal testimony of the Sheridan County Sheriff. He testified that he inspected the Econoline van after defendant was arrested and made a registration check of its license plates, using the National Crime Information Center system. He explained that a teletype request was made to the Colorado Department of Motor Vehicles through Cheyenne, and that the reply was a coded teletype abstract of the license plate registration as recorded on the computer at the Colorado agency. Despite a series of objections by defense counsel, the witness was allowed to testify from this document that the license plate "was registered under the name of Marv's Mastercraft [defendant's business], 406 Juanita Street; [sic] Colorado Springs, Colorado," and it was for a 1974 Jeep station wagon. The teletype message was not introduced into evidence.

Defendant argues that it was error to admit this testimony inasmuch as: (1) the teletype message was not admissible as a record of regularly conducted activity under Rule 803(6), W.R.E., because the sheriff's testimony did not satisfy the foundation requirement of the rule; (2) the testimony was an improper summary of hearsay statements contained in the document; and (3) the testimony was improper impeachment since evidence of specific instances of conduct to attack credibility is not admissible under Rule 608(b), W.R.E.[4] The state's primary response is that the teletype message was admissible under Rule 803(8), W.R.E., as a public record or report.

■■■ We hold that error was committed in allowing the witness to testify as to the contents of the teletype reports without introducing the message itself into evidence. Rule 1002, W.R.E. provides that an original is required when the object is to "prove the content of a writing, recording or photograph." An original is defined as including any computer printout or other readable output of data stored in a computer or similar device. Rule 1001(3), W.R.E. Although the testimony of a witness may be necessary to interpret or explain the contents of a computer printout, he can do so only after the printout itself is properly in evidence.[5] The error here may have been further compounded by the fact that the admissibility of the document itself may be governed by other provisions of Art. X of the Wyoming Rules of Evidence. For example, the computer data may have been used to show the contents of an original record stored in the computer, in which case, it may be a duplicate under Rule 1001(4), W.R.E., subject to proof of the authenticity or continuing effectiveness of the original. Rule 1003, W.R.E. See 5 Wein-

---

4. We will not consider this argument since the record reveals that an objection on this ground was not presented to or raised in the trial court. *Nisonger v. State*, Wyo., 581 P.2d 1094 (1978); and *Jones v. State*, Wyo., 580 P.2d 1150 (1978).

5. When a witness refreshes his memory from a writing or document, the best evidence rule does not apply. See Rule 612, W.R.E. However, the document here was not used to refresh the memory of the witness since he was not testifying to facts of which he had prior first-hand knowledge.

stein's Evidence, ¶ 1001(4)[07], pp. 1001–102 to 104 (1978). Its admissibility may have been governed by Rule 1005, W.R.E., which provides that certified copies of public records, "including data compilations in any form," may be used as proof of the contents of an original record. These rules illustrate that the teletype message itself should have been placed in evidence before an effort was made to interpret its contents.

It is not necessary to concern ourselves with the prejudicial nature of the admission of this testimony inasmuch as the case is being reversed on other grounds and the discussion of this issue is for guidance in event the issue arises in the new trial.

Reversed and remanded for a new trial.