**Kevin James ROBINSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 99–167.**

Supreme Court of Wyoming.

Sept. 28, 2000.

Before LEHMAN, C.J., and THOMAS, MACY,* GOLDEN, and HILL, JJ.

GOLDEN, Justice.

This appeal primarily requires that we determine whether hearsay evidence that served to establish Appellant Kevin Robinson's sexual relationship with a fifteen-year-old girl and his motive for killing her was properly admitted under several exceptions. Robinson was convicted of voluntary manslaughter in her death, and his sexual relationship with her resulted in additional convictions for soliciting to engage in illicit sexual relations with a minor and immoral or indecent acts with a minor child. He presents a number of other constitutional and evidentiary issues.

We affirm the convictions.

* Retired June 2, 2000.

## ISSUES

Robinson presents these issues for our review:

1. Did the trial court err in denying all motions for Judgment of Acquittal on the charges of Murder in the First Degree, Second Degree and subsequently the conviction of Voluntary Manslaughter?

2. Was there insufficient evidence produced at trial to prove beyond a reasonable doubt all elements of the crime of voluntary manslaughter?

3. Did the trial court abuse its discretion in allowing hearsay testimony of friends, teachers and the mother of the victim? Alternatively, did trial counsel for Appellant commit ineffective assistance of counsel by failing to object to the hearsay testimony at trial?

4. Did the trial court commit reversible error when it commented, in the presence of the jury, on the testimony of defense witness Aaron Van Kirk?

5. Did the trial court err in its governing of *voir dire*, in that trial counsel for Appellant were made to exercise peremptory strikes without having examined the whole panel?

6. Was Appellant's constitutionally protected right to silence violated by the closing argument by the State?

7. Was the photographic lineup used to identify Appellant as the person whom the victim met with the weekend before her death violative of due process in that it was unnecessarily suggestive and created a very substantial likelihood of an irreparable misidentification?

8. Did trial court err by not permitting evidence of the victim's prior relationships which resulted in the incarceration of three men?

9. Did trial counsel for Appellant provide ineffective assistance of counsel by failing to question and impeach Aaron Van Kirk regarding his conviction for having sexual relations with the victim, as well as by failing to compel the testimony of Xavier Lopez with regard to his relationship with the victim, and his conviction, and additionally failing to fully reveal to the jury Aaron Van Kirk's past history, and statements made concerning the death of the victim?

10. Did cumulative error occur in such proportion as to deprive Appellant of a fair trial and as to require reversal?

The State restates the issues as follows:

I. Did the district court commit prejudicial error in denying Appellant's motion for judgment of acquittal on first and second degree murder and instructing the jury on those crimes, when Appellant was not convicted of either crime?

II. Was the evidence sufficient to permit the jury to find Appellant guilty of voluntary manslaughter beyond a reasonable doubt?

III. Did the district court properly find that Daphne Sulk's statements to her mother, friends and teachers fell within exceptions to the hearsay rule?

IV. Did the district court commit prejudicial error when it commented upon the deportment of witness Aaron Van Kirk?

V. Did the district court err in requiring Appellant to exercise peremptory challenges before the entire venire had been questioned?

VI. In closing argument, did counsel for the state improperly comment on Appellant's exercise of his constitutional right to silence?

VII. Was the photographic lineup from which Appellant was identified unnecessarily suggestive and did it create a substantial likelihood of irreparable misidentification?

VIII. Did the district court improperly exclude evidence that persons other than Appellant might have possessed a motive to harm Daphne Sulk?

IX. Was Appellant denied effective assistance of counsel because of defense counsel's failure to call and impeach witnesses?

X. Is the doctrine of cumulative error applicable where no error appears in the record?

## FACTS

On November 11, 1997, the nude body of fifteen-year old Daphne Sulk was discovered in the mountains east of Laramie, Wyoming. She had seventeen stab wounds to the chest and neck area, multiple defensive wounds, and had been bludgeoned. A forensic pathologist testified that the number of wounds inflicted was consistent with rage. The murder apparently had occurred elsewhere; and although an exact time of death could not be determined, it was believed to have been not more than four or five days before her body was discovered. An autopsy revealed that the victim was less than a month pregnant; however, the pathologist did not perform DNA testing on the embryo, and further procedures prevented later testing.

The victim's mother, Roberta Sulk, reported her daughter as a runaway on October 31, 1997, and the victim was believed to have spent from November 3 to November 5 in an abandoned trailer with another juvenile runaway who last saw the victim as she entered a large blue car driven by an unseen person who has never been identified. According to this juvenile, the victim identified the driver as her boyfriend. Robinson drives a gold Honda. At about this same time, the victim told a juvenile friend that she had three boyfriends. Approximately two or three days later, on either November 8 or 9, this same juvenile walked with the victim to a convenience store where the victim met a man in the parking lot. The juvenile identified Robinson from a photograph lineup as the man who met the victim. As late as possibly the night of November 10, another juvenile reported seeing the victim at a grocery store.

On November 6, Officer Hasselman, who was investigating the runaway complaint, spoke with a juvenile friend of the victim who told him that the victim was about a month pregnant by a "Kevin Robertson ... who lived by the Civic Center." Hasselman determined that "a Kevin Robinson" lived in the area and fit the description given by the juvenile friend. Hasselman watched Robinson's house on November 7 but did not see the victim. On Monday, November 10, he found Robinson outside his house and asked him about the victim. Robinson stated that he knew her, identified her as a girl who smoked cigarettes in the alley behind his house, and stated that he had not seen her in over a month.

On November 11, Robinson left his car in a parking lot, took a shuttle to Denver International Airport, and flew to Texas with a coworker for work-related training. After the victim's body was found and identified that same day, the investigation immediately focused on Robinson, and search warrants for his home and car were obtained. Small blood spots were found in the trunk and on the door of Robinson's car and, after DNA testing identified the blood as the victim's, it was stipulated to be her blood.

A close friend of Robinson's, John Michael Roberts, Jr., testified that Robinson had told him about a girl who would stand in the alley behind his home and flirt with him when he was outside. After Robinson reported to Roberts that the girl had told him that men had gone to prison for having sex with her, Roberts came to Robinson's home in early September, met the girl inside of the home and, believing she was underage, advised Robinson to stay away from her. Robinson was thirty-eight years old at that time. Another witness testified that, on October 9 or 10, she and the victim went to Robinson's house at about 10:30 p.m. and watched TV. Robinson and the victim sat on the couch, flirting and holding hands until the witness' friend picked up the two girls and took them home. Later, the victim told the witness that she had returned to Robinson's home and spent the night with him. The victim's mother testified that on October 9, a police officer investigating a runaway report on another juvenile came to her home to talk to the victim. Her daughter did not return home until the next morning, and the mother observed that she rinsed out her underwear. Her daughter told her that she had spent the night in a bathroom at Undine Park.

Other hearsay evidence admitted under various exceptions established that, after September 1, the victim told a counselor about a relationship with a "secret friend" and told friends during that same time period that she and "Kevin" were involved in a

sexual relationship and that he sometimes had her remove clothing in front of him. The victim's mother testified that her daughter had driven her past Robinson's house and told her that a "Mr. J or Mr. Jackson" lived there and that she was going to babysit his two children. On October 27, she told her mother that she was pregnant and that "Mr. Jackson" gave her a ride to school. On her mother's calendar, the victim had written "Mr. J leaves" for November 11 and "Mr. J back" for November 16.

The victim told her friends that Robinson was the father of the baby she was carrying and that he wanted the pregnancy aborted. She told teachers she was pregnant, the father did not attend her junior high school, and he was very upset about the pregnancy. One friend reported that the victim stated that Robinson had her perform two pregnancy tests in front of him. The male juvenile who accompanied the victim to the convenience store on either November 8 or 9 testified that the victim told him that she was going to meet her boyfriend and had run away because of her mother.

Robinson was charged with first degree murder, soliciting to engage in illicit sexual relations with a minor child, and committing immoral or indecent acts with a minor child. Pretrial rulings admitted the hearsay evidence. During the jury instruction conference, the State's request to add an instruction on second degree murder was approved as was Robinson's request for an instruction on voluntary manslaughter. Robinson was convicted of voluntary manslaughter, soliciting to engage in illicit sexual relations with a minor and immoral or indecent acts with a minor. Robinson filed motions for a judgment of acquittal at the close of the State's case, the close of the trial, and after the verdict was entered. All were denied. A motion for a new trial was also denied, and this appeal followed.

## DISCUSSION

### Standards of Review

 Robinson presents several hearsay evidence issues and two ineffective assistance of counsel claims. The district court's deci-sion admitting hearsay evidence is an evidentiary ruling, and rulings on the admissibility of evidence are within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of a clear abuse of discretion. *Simmers v. State*, 943 P.2d 1189, 1197 (Wyo.1997). We will not overturn a trial court's discretionary decision unless the court acted in a manner exceeding the bounds of reason and could not rationally conclude as it did. *Id.* "[D]ecisions of the trial court with respect to the admissibility of evidence are entitled to considerable deference and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be reversed on appeal." *Id.* (quoting *Vit v. State*, 909 P.2d 953, 957 (Wyo.1996); *Tennant v. State*, 786 P.2d 339, 343 (Wyo. 1990)). It is also well established that a district court judgment may be affirmed on any proper legal grounds supported by the record. *Bird v. Rozier*, 948 P.2d 888, 892 (Wyo.1997). However, where the law imposes a duty on the district court to make findings on the record, we will not speculate about the reasons for the decision. *English v. State*, 982 P.2d 139, 143 (Wyo.1999).

A claim of ineffective assistance of counsel is reviewed under the well known standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984):

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."

We invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the

bounds of reasonable professional judgment. *Jackson v. State*, 902 P.2d 1292, 1295 (Wyo.1995).

*Mapp v. State*, 953 P.2d 140, 143 (Wyo.1998).

We shall identify other applicable standards of review as necessary when we treat below a particular issue.

### Motion for Judgment of Acquittal

Robinson contends that the trial court's failure to grant his motion for judgment of acquittal on the counts for first and second degree murder gave rise to the additional instruction on voluntary manslaughter for which he was convicted. In reply, the State contends that one cannot appeal the denial of a motion for judgment of acquittal on charges for which the jury ultimately acquits.

■ W.R.Cr.P. 29 permits motions for judgment of acquittal at the close of evidence by either side and after discharge of the jury. In this case, Robinson made three motions for judgment of acquittal, but it is our rule of law that introducing evidence waives the earlier motion and only the later motion may be claimed as error. *Hodges v. State*, 904 P.2d 334, 339 (Wyo.1995). The motion made after the jury returned its verdict indicates that at the close of all evidence during the jury instruction conference, the State requested and received an instruction on second degree murder and the defense then requested and received an instruction on voluntary manslaughter. Because of his acquittal on first and second degree murder, the last motion was limited to the conviction for voluntary manslaughter. We, therefore, will consider whether the evidence was sufficient to support the conviction for voluntary manslaughter.

### Sufficiency of the Evidence of Voluntary Manslaughter

In its order denying the motion, the trial court noted that defense counsel justified its request for the voluntary manslaughter instruction by stating "there is a reasonable inference that perhaps there was some kind of argument that escalated into this kind of tragedy.... I think the heat of passion is a reasonable inference based upon the circum-

stances.... I believe, based upon the character of Mr. Robinson and the nature of the motive that's been put forward by the State...." The trial court noted its agreement and ruled that, based on the justification stated by the defense, the instruction on voluntary manslaughter was proper.

■ We review the denial of this motion under our standard of review for sufficiency of the evidence claims:

This Court assesses whether all the evidence which was presented is adequate enough to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State. We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*Hodges*, 904 P.2d at 339 (citing *Baier v. State*, 891 P.2d 754, 761 (Wyo.1995)).

The voluntary manslaughter instruction given to the jury stated:

The elements of the crime of Voluntary Manslaughter are:

1. Between the days of November 6th and November 11th, 1997;

2. In Albany County, Wyoming;

3. The Defendant, Kevin James Robinson;

4. Voluntarily;

5. Upon a sudden heat of passion;

6. Killed another person.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the defendant not guilty.

On appeal, Robinson disputes that the evidence indicated that he was involved with the victim and acted to kill her with premedita-

tion, malice, or a sudden heat of passion. However, for the same reasons offered by defense counsel and accepted by the trial court, we find that the evidence justified giving this instruction. The number and nature of the wounds suffered by the victim more than support an inference that the killer's actions were voluntary, and evidence that Robinson was sexually involved with the victim and upset about her refusal to terminate her pregnancy supports an inference that an argument resulted in the killing. We find no error.

### Hearsay

 Robinson filed pretrial motions to suppress certain hearsay evidence that were denied. Subsequently at trial, defense counsel made no objections when the hearsay evidence was introduced. We first address whether having received a pretrial ruling admitting the evidence, defense counsel was required to object at trial. In *Dike v. State,* 990 P.2d 1012 (Wyo.1999), *cert. denied,* — U.S. ——, 120 S.Ct. 1697, 146 L.Ed.2d 502 (2000), we noted that this Court had not addressed the precise issue whether a motion in limine is sufficient to preserve an issue for appeal but did not resolve the issue. *Id.* at 1019. We have determined that when an order on a motion in limine excludes evidence, W.R.E. 103(a) requires no further action to preserve the issue. *Sims v. General Motors Corp.,* 751 P.2d 357, 362 (Wyo.1988). On the other hand, we have stated that when a defendant does not testify he does not preserve for appeal an adverse ruling on his motions in limine applicable to W.R.E. 404 and 609. *Tennant,* 786 P.2d at 342; *Vaupel v. State,* 708 P.2d 1248 (Wyo.1985). When interpreting the Wyoming Rules of Evidence, we recall "[t]he Wyoming Rules of Evidence are based on the policy that conformity to federal practice is more important than uniformity of state practice. Therefore, except as indicated in a 'Committee note' following a rule or subdivision thereof, the Wyoming Rules of Evidence are the federal rules verbatim." W.R.E., Committee Note, at 439. Consequently, United States Supreme Court

cases which interpret equivalent federal rules can be persuasive authority to this Court. *Johnson v. State,* 930 P.2d 358, 362 (Wyo. 1996).

 Both *Tennant* and *Vaupel* relied upon *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), a decision limited to F.R.E. 609(a). *Luce* found that a reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context unless the defendant testifies. *Id.* at 41, 105 S.Ct. at 463. The motion to exclude hearsay evidence in Robinson's case resulted in a definitive ruling that does not require an additional objection at trial. The Committee Note to W.R.E. 103 states:

> Under Rule 103(a), it is not necessary to re-offer evidence which has been suppressed by action of the court on a pretrial motion, such as a motion in limine or a motion to suppress, or to make a further objection at the time of trial to evidence which has previously been ruled admissible on such a pretrial motion.[1]

For purposes of the motion to exclude hearsay evidence in this case, the trial court's definitive pretrial ruling on the issue preserved the issue for appeal, and it was unnecessary for Robinson to object again at trial.

### A. Hearsay Rulings

Robinson moved to exclude hearsay statements and, after hearings, the trial court issued pretrial rulings admitting hearsay testimony of the victim under exceptions to the hearsay rule. The trial court relied on exceptions governing statements of the victim's then-existing state of mental, emotional or physical condition under W.R.E. 803(3); statements against penal interest under W.R.E. 804(b)(3); and statements within the residual hearsay exception of W.R.E. 803(24) or 804(b)(6). Robinson contends that the trial court abused its discretion in admitting the hearsay testimony.

### 1. Statements Against Penal Interest Exception

The victim stated to a juvenile friend, NB, that she and Robinson had sexual relations,

---

**1.** In the most recent federal decision, the Seventh Circuit noted that an amendment to F.R.E. 103 that would resolve this question is progress-
ing but to date is silent on the subject. *Wilson v. Williams,* 182 F.3d 562, 565 (7th Cir.1999).

she was pregnant and that Robinson was the father. The State served notice of its intent to introduce these statements under W.R.E. 803(24) and W.R.E. 804(b)(6). Noting that the victim was an adjudged delinquent under the supervision of the court for similar misconduct, the trial court ruled that these statements were statements against interest as defined in W.R.E. 804(b)(3) and as interpreted by *Brown v. State*, 953 P.2d 1170, 1178 (Wyo.1998), and *Johnson v. State*, 930 P.2d 358, 363 (Wyo.1996), because of her death the victim-declarant was unavailable, and the statements were admissible. Robinson does not challenge the determination that the statement was in fact against her penal interest. He limits his challenge to the notion that this particular fifteen-year-old victim who was plagued by emotional and behavioral problems would have engaged in an admission-against-interest analysis before deciding to confide in another teenager. In other words, he challenges that the statement was sufficiently against her interest.

█ Concerning these statements, we inquire "[w]hether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.'" *Johnson*, 930 P.2d at 363. "[W]hether the statement was sufficiently against the declarant's penal interest 'that a reasonable person in the declarant's position would not have made the statement unless believing it to be true,' ... can only 'be answered in light of all the surrounding circumstances." *Id.* (quoting *Williamson v. United States*, 512 U.S. 594, 603–04, 114 S.Ct. 2431, 2437, 129 L.Ed.2d 476 (1994)). "This can be a fact-intensive inquiry, which would require careful examination of all the circumstances surrounding the criminal activity involved." *Id.*

█ The evidence before the trial court showed that the victim-declarant had indicated to her professional counselor that she knew what type of information was against her interest and what information her professional counselor would have to report to the authorities, and she refused to reveal the name of her adult sexual partner or the name of the father of her child. She did reveal

that information to her friend. Under these circumstances, the district court was to consider to whom the statements were made, their relationship, and the victim's motivation in making the statement. Although the victim had no expectation that her friend would disclose her statement to the authorities as she would if the statement had been made to her counselor, "federal and state courts have regularly admitted statements to acquaintances under the penal interest exception to the hearsay rule." *State v. Gutierrez*, 119 N.M. 658, 894 P.2d 1014, 1017 (1995), *cert. denied*, 119 N.M. 514, 892 P.2d 961 (1995). In this case, the fact that the statement was made to a friend assists in the determination of trustworthiness because of the lack of motivation to lie. The Advisory Committee Note to F.R.E. 804(b)(3) states:

> A statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest.... On the other hand, the same words spoken under different circumstances, *e.g.* to an acquaintance, would have no difficulty in qualifying.

30B Michael H. Graham, *Federal Practice and Procedure: Evidence*, § 7075, at 643 (Interim ed.2000).

Without specific evidence that the victim lied, we find no abuse of discretion by the district court's determination that a reasonable person sent to the Wyoming Girls' School for previous legal difficulties, as the victim-declarant had been, would understand that the statement was against her penal interest although the statement was made to a friend. We agree with the trial court that the statement falls under the exception.

█ Generally, the Confrontation Clause prohibits introducing hearsay into a trial unless "the evidence falls within a firmly rooted hearsay exception" or otherwise possesses "particularized guarantees of trustworthiness." *Lilly v. Virginia*, 527 U.S. 116, 124–25, 119 S.Ct. 1887, 1894, 144 L.Ed.2d 117 (1999) (quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)). *See also Johnson*, 930 P.2d at 362.

Under this general framework, the Court finds that the "veracity of hearsay statements is sufficiently dependable to allow the untested admission of such statements against an accused." *Lilly*, 527 U.S. at 124–25, 119 S.Ct. at 1894. Unlike the facts in *Lilly* where an accomplice implicated himself in the crime at issue, the victim's statements to her friend in this case satisfy the Confrontation Clause's trustworthiness requirement. The statements implicated the victim in misconduct other than the crime for which Robinson was convicted, and the statements do not involve the confession of an accomplice and were not made in order to either shift blame for a crime to a co-defendant or for some other improper motive such as courting favor with the authorities. The victim's "against penal interest" declaration satisfied the Confrontation Clause's trustworthiness requirement, and we find no error in admitting the statements under Rule 804(b)(3).

### 2. *State of Mind Exception.*

██ The victim stated to a juvenile friend, NB, that Robinson wanted the pregnancy terminated by an abortion. The trial court determined that the statement was double hearsay and ruled that if the State was offering it to show Robinson's knowledge of the pregnancy it was not hearsay, but that if the State was offering it to show any dispute about the pregnancy, then it fit under W.R.E. 803(3) to show the then existing states of mind of Robinson and of the victim to show that she intended to have the baby. Robinson contends that the statement was inadmissible hearsay offered to prove that Robinson was the father and wanted the pregnancy aborted. Any application of the state of mind exception fails, he contends, because the state-of-mind exception does not authorize hearsay received by one person as proof of another's state of mind.

W.R.E. 805 states:

Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.

Applying that rule to these statements, we find that Robinson's statement was properly admitted as an admission and the victim's statement was admissible under W.R.E. 803(3) to show her then-existing physical condition of pregnancy and her intent not to terminate her pregnancy. We find no abuse of discretion.

██ At the motion to suppress hearing, the trial court found that the victim stated to a male juvenile friend, KH, that she had two boyfriends in addition to Robinson and asked that same friend whether he wanted to go see her boyfriend down at the Mini–Mart. The two then walked to the store where the friend personally observed her meet with a man that he later identified as Robinson. The trial court admitted this statement under W.R.E. 803(3) as showing the victim's plan to go to see her boyfriend at the Mini–Mart. We find no abuse of discretion.

### B. *Plain Error Standard of Review.*

██ Under the plain error standard of review, Robinson appeals the admission of the large quantity of hearsay statements through a friend, teachers, and the victim's mother allowing the State to identify Robinson as the older man who had engaged in sexual activity with the victim, had impregnated her, had been upset about her pregnancy, and had insisted upon an abortion. The victim's statements to her friend that she went over to Robinson's house frequently and, at his direction, would remove her clothing for him are admissible as statements against her penal interest. Her statements to her teachers and friends that she was pregnant were admissible under W.R.E. 803(3).

██ Robinson contends that the testimony of the victim's mother about the victim's hearsay statements was inadmissible and prejudiced him by impermissibly shifting the burden to him to prove that he was not "Mr. J" and was not with the victim on the night of October 9. The victim's mother testified that her daughter had driven her past Robinson's house and told her that a "Mr. J or Mr. Jackson" lived there and that she was going to babysit his two children. On October 27, she told her mother that she was pregnant and that "Mr. Jackson" gave her a

ride to school. On her mother's calendar, the victim had written "Mr. J leaves" for November 11 and "Mr. J back" for November 16. The first two statements fall under W.R.E. 803(3), and although the State does not claim that the calendar notations and the statement that "Mr. Jackson" gave her a ride to school are admissible under a hearsay exception, we agree that Robinson does not demonstrate that their admission materially prejudiced him.

### Court Commentary About Aaron Van Kirk

█ Robinson called Aaron Van Kirk as a witness to testify that Van Kirk had been in contact with the victim in the days before her death. Robinson established that Van Kirk had talked to the victim on November 7 or 8 and, although vague on the dates, that Van Kirk and another man, Byron Miskimon, had taken her to a Mini–Mart. Van Kirk testified that she told him that she was pregnant, and the father could be any one of three men, that something "had happened in the past" between him and the victim, and that the police had interviewed him about the victim.

Van Kirk's testimony was vague and unhelpful, and Robinson attempted to question Detective Beck about Van Kirk's relationship with the victim. The State objected, and the trial court sustained the objection. Defense counsel responded, "Your Honor, my response is that Mr. Van Kirk couldn't remember when he was on the stand whether he had been interviewed by the police or his interactions with Daphne Sulk." In the presence of the jury, the trial court replied, "For the record, Counsel, I'm not sure Mr. Van Kirk even knew where he was when he testified."

Later, in chambers, the trial court stated that it was familiar with Van Kirk as a seriously disturbed individual who may not have been competent to testify. Robinson contends that the trial court's comment in the jury's presence implied that Van Kirk's testimony was not credible and requires reversal in accord with *Phillips v. State,* 597 P.2d 456, 458 (Wyo.1979). In *Phillips* we reversed after concluding that the trial court's comment about the defendant's testi-

mony implied that it was not credible. *Id.* The particular circumstances of *Phillips* warranted the reversal because the defendant's testimony provided the only evidence of his version of events. *Id.* The State argues that Van Kirk's disturbed mental state was obvious and the trial court's comment did not prejudice Robinson. We agree with that contention and note that during Van Kirk's testimony, the defense established that Van Kirk was supposed to be taking anti-psychotic medication, but usually tried to "deal with it with the Lord." After the trial court's comments, the defense called the police investigators in the case and established that other potential suspects existed, one of whom included Van Kirk, and that the victim had been in contact with him shortly before her death. Under the particular circumstances of this case, we find that the jury would view Van Kirk as a potential suspect presented to establish that he was with the victim right before her death, and the trial court's comment did not undermine the defense theory that he was an alternative suspect.

### Peremptory Challenges

██ Because a large venire was summoned for jury duty, the trial court conducted voir dire on one-half of the panel on one day and on the other half on the second day. The trial court required exercise of peremptory challenges at the end of each day for the panel. Robinson contends that this process resulted in reversible error when defense counsel was unable to evaluate the entire panel beforehand. Robinson, however, does not indicate whether defense counsel accepted or refused the empaneled jury, and our review of the record indicates that at the end of the second day, he did accept it without objection. Generally, when a defendant passes a jury panel for cause, he waives his claim to reversible error. *Prindle v. State,* 945 P.2d 1180, 1182 (Wyo.1997). Robinson's claim for reversible error has been waived.

### Improper Comment on the Right To Silence

█ In closing argument, the prosecutor discussed Officer Hasselman's encounter with Robinson, stating:

And he also told you what he asked the Defendant, Mr. Robinson. What Mr. Robinson didn't say speaks volumes in this case. Phil Hasselman asked him if he knew Daphne Sulk. The answer Mr. Robinson gave was this: "About a month ago I saw Daphne Sulk, a little girl who smokes cigarettes in the alley."

What he did not tell Mr. Hasselman was that a month ago, on the 9th day of October, he was sleeping with Daphne Sulk in his house. What he didn't tell Mr. Hasselman was that on the previous weekend, he had walked away from the Mini Mart with Daphne Sulk.

\* \* \*

The only thing he said was Daphne Sulk was a little girl who smoked cigarettes. He didn't mention anything about the pregnancy test. He didn't mention that less than a week ago he sat with Daphne Sulk as she performed two pregnancy tests to see if she was pregnant. What he didn't tell you speaks volumes.

Robinson contends this argument was an improper comment on his right to silence. The State contends this was proper argument emphasizing that Robinson had lied to the officer. Prosecutorial comment upon a defendant's exercise of his right to silence will entitle the defendant to reversal. *Tortolito v. State*, 901 P.2d 387, 390 (Wyo.1995). A mere reference to his silence, however, will not require reversal absent a showing of prejudice to the defendant. *Id.* We consider the entire context in which the statements were made to decide whether there was an impermissible comment upon the defendant's exercise of his right of silence, and will not take sentences and phrases out of context. *Beartusk v. State*, 6 P.3d 138, 144 (Wyo. 2000). We recently decided that a prosecutor did not directly comment on a defendant's right to silence by cross-examining the defendant on whether he had volunteered certain facts after agreeing to talk with police. *Emerson v. State*, 988 P.2d 518, 522 (Wyo.1999). In this case, it is apparent from the record that the prosecutor utilized a technique to argue the evidence presented through other witnesses about Robinson's re-lationship with the victim. Although the prosecutor did state that "what he didn't tell you speaks volumes," in context, the prosecutor had been referring to the police officer and most likely intended to again refer to the officer. Robinson does not contend that this was prosecutorial comment on his decision not to testify at his trial, and we find no error. *See Sturgis v. State*, 932 P.2d 199, 205 (Wyo.1997).

***Photographic Lineup***

The juvenile who accompanied the victim to Mini–Mart to meet her boyfriend identified Robinson as the man who left with her. That identification was made from a photographic lineup two months after the discovery of the body. Robinson asserts a due process challenge, contending that the juvenile saw the man for a short period of time as the man walked away from the juvenile at the Mini–Mart; the juvenile was influenced by the charges against him; Robinson was one of two in the lineup wearing an orange jumpsuit, making it apparent he was in police custody; and the police refused the juvenile's request to see a whole body picture in order to make a correct identification. Objection was made pretrial and at trial and overruled.

The standard for evaluating such due process challenges to pretrial lineup and showup procedures has often been articulated, both by this court and the United States Supreme Court. The admission of evidence derived from pretrial identifications violates due process protections only if, under the totality of circumstances, the particular procedures employed were so unnecessarily suggestive as to create a very substantial likelihood of an irreparable misidentification. The principal motive for excluding such evidence is to keep eyewitness identifications from the jury where circumstances strongly suggest that the State caused the witness to make a mistake. Thus, the reliability of the identification is the key to determining admissibility, and even an unnecessarily suggestive pretrial identification may be admissible if the surrounding facts indicate that it was otherwise reliable.

In determining whether the identification was sufficiently reliable, we weigh a

number of factors against the corrupting influence of the identification procedure. We consider whether time and environmental conditions gave the witness an ample opportunity to view the perpetrator of the crime at the scene. We also examine the degree of the witness' attention to the perpetrator at that time, giving due regard to whether the witness was casually or intimately involved in the criminal event, and whether the witness had any special training or experience in making observations or identifications. Next, we analyze the accuracy of any description the witness may have given prior to identifying a suspect, in terms of the time lapse between the event and the description, the extent of the characteristics described, and the extent to which those characteristics peculiarly identify the suspect. Finally, we consider the certainty with which the witness identified the suspect and the time that elapsed between the criminal encounter and the later identification.

*Green v. State*, 776 P.2d 754, 756 (Wyo.1989) (citations omitted).

■ If we find that the procedures were not unnecessarily suggestive, then we need not make further inquiry. *McCone v. State*, 866 P.2d 740, 748 (Wyo.1993). However, Robinson contends that the State concedes this point, and we will assume the procedures were suggestive, but we find that the factors favor the admission of the photo identifications. *Taul v. State*, 862 P.2d 649, 654 (Wyo. 1993). The record shows that the juvenile witness had ample time to observe the man who met the victim and his observation was from a distance of fifteen to twenty feet, without obstruction and with adequate light. The juvenile's description of the man's race, height, build, features, and age all fit Robinson's description. The credibility of the juvenile's identification goes to the weight of his testimony, not to its admissibility. *Id.* The photo array identification was admissible.

### Exclusion of Alternative Suspect Evidence

■ Robinson contends that the trial court erred in excluding evidence that three other men had previously been charged, convicted and incarcerated for their sexual relationship with the victim. Although he contends that the trial court excluded that evidence because it did not fall within the time period of September 1997 through November of 1997, the State contends that the record does not indicate that Robinson intended to offer evidence of other possible suspects. Robinson does not provide any record citation in reply to this argument. Our review of the record indicates that Robinson limited its strategy to suggesting the possibility of other suspects through certain witnesses and did not seek pretrial rulings or make an offer of proof that evidence of another suspect existed. We find no error.

### Ineffective Assistance of Counsel

■ Robinson contends that trial counsel provided ineffective assistance of counsel by failing to question and impeach Aaron Van Kirk regarding his conviction for having sexual relations with the victim, as well as by failing to compel the testimony of Xavier Lopez with regard to his relationship with the victim, and his conviction for having sexual relations with the victim. Additionally, he contends that it was ineffective assistance of counsel to fail to fully reveal to the jury Aaron Van Kirk's past history and statements made concerning the death of the victim. He argues that W.R.E. 609 permits this type of impeachment. The State contends that Robinson is arguing that his counsel was deficient by not calling witnesses in order to impeach them about their previous convictions for the purpose of showing they had a possible motive to harm the victim. It further argues that evidence of mere possible motivation is not admissible in Wyoming under *Horn v. State*, 12 Wyo. 80, 73 P. 705, 715 (1903).

The relationships of both men with the victim were established at trial, and other testimony showed that the victim was afraid of Lopez' daughters. Testimony about other potential suspects was noted by the jury as indicated by a question it asked during deliberations about Lopez and his family. We do not find that counsel deficiently performed because it did not introduce this information under W.R.E. 609, nor does the record indicate that evidence other than the possibility

of motive existed and defense counsel failed to introduce it. Robinson has therefore "not shown the prejudice necessary for an ineffective assistance of counsel claim." *Barela v. State,* 936 P.2d 66, 69 (Wyo.1997) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).

### Cumulative Error

Having found one error that was not prejudicial, we need not consider Robinson's final argument that cumulative error requires reversal.

The conviction is affirmed.